Vernon Lynn Bonnem, Plaintiff-Appellant, v. George
D. Harrison, d/b/a Ravinia Auto Service Station,
and Herbert Rodgers, Defendant-Appellees.

Gen. No. 11,110.

Second District, Second Division.

April 1, 1958.

Rehearing denied June 3, 1958.

Released for publication June 3, 1958.

Singer & Singer, of Highland Park, for appellant.

Hall, Meyer and Van Deusen, of Waukegan (Lloyd A. Van Deusen, of counsel) for appellee, George D. Harrison.

JUSTICE WRIGHT delivered the opinion of the court.

Plaintiff, Vernon Lynn Bonnem, sued George D. Harrison and Harrison's employee, Herbert Rodgers, for an assault and battery committed upon him, by the latter. The case was tried before a jury. At the close of plaintiff's case the court directed a verdict in favor of the employer Harrison. From this verdict and judgment, plaintiff appealed.

The jury found the employee Rodgers guilty and assessed damages at $8,000. It also found that Rodgers wilfully and maliciously assaulted and injured the plaintiff. No cross-appeal is prosecuted.

The plaintiff's theory is that there was ample proof to justify a jury in bringing in a verdict in favor of the plaintiff against the defendant employer, as well as against the employee, and that it was solely for the jury to determine whether or not the wrongs of the agent or servant were committed during the course of his employment, while acting within the scope of his authority, and that the court erred in taking the case away from the jury as to the employer and directing the jury to bring in a verdict in favor of the defendant employer, and that the court also erred in refusing to set aside the verdict and grant a new trial.

George D. Harrison, the defendant-employer's theory of the case is that the trial judge properly directed a verdict in his favor at the close of plaintiff's case for the reason that, when all of the plaintiff's evidence was considered in its aspect most favorable to the plaintiff, there still was no evidence to prove the necessary element of plaintiff's case, to-wit, that the relation of master-servant existed with respect to the particular transaction from which the tort arose.

The narrow issue presented here is the question of whether or not there is any evidence to support plaintiff's contention that the relationship of master and servant existed at the time and in respect to the transaction out of which the injury arose.

Plaintiff was in the employ of the Wm. Ruehl Chevrolet Company in Highland Park, Illinois, as service manager at the time of the occurrence. Defendant, Herbert Rodgers was employed by the defendant, George D. Harrison, who operated the Ravinia Auto Service Station also in Highland Park, Illinois. Plaintiff and Rodgers were not acquainted with each other prior to December 6, 1955. Rodgers, age 30, was a negro employed as an attendant at the defendant Harrison's filling station. Rodgers was one of six men employed by Harrison. His duties consisted of servicing cars, picking up parts, running errands, etc. On December 6, 1955, the date of the occurrence, Harrison instructed Rodgers to go in his own car after his lunch hour to the Wm. Ruehl Chevrolet Company and there purchase a light switch for a Chevrolet which Harrison was repairing for a customer. Rodgers went on that mission, as instructed. He parked his car at the entrance of the throat of the Chevrolet parking lot, blocking the ingress and egress of cars to the lot.

There was then a series of conversations, statements and harsh remarks between the plaintiff and Rodgers,

294

some taking place in the Chevrolet building and some outside. Some of the statements being made before Rodgers moved his car and some after. Since the vital question involved herein is whether or not there was sufficient evidence to support plaintiff's theory, we will summarize below the version of the occurrence given by the plaintiff and Rodgers upon the trial of this matter.

On the date in question, Rodgers testified that he ate lunch and then went to the Chevrolet agency, arriving a few minutes past 1 o'clock P. M. He stated that he went there to purchase an electric switch for a Chevrolet, upon the instruction of his employer. After parking his car the first thing that he did was to walk inside the building to purchase the part. As he walked in, he stated that he thought that the plaintiff sent a colored man by the name of "Bill" to the entrance or door. "Bill" yelled out and asked who's car was sitting out there and Rodgers stated that it was his. Rodgers quoted the conversation between himself and the colored man by the name of "Bill", as follows: "And he say, can you move it, and I say, what for, I say the keys are in the car, go ahead and move it, I will be right out when I purchase the part here." Rodgers then testified as follows, still referring to the man called Bill, "He left the door and went back to move the car and he came back across the lot and he said come out and move it out, and I say 'you move it.' " Rodgers then stated that the plaintiff said, "Big boy, come on and let us get the car the hell out of here." Rodgers then testified that he moved the car and went back inside the building and was proceeding to the parts desk. At that time, when Rodgers was between the doorway and the service desk and parts desk he testified the following conversation took place between the two of them, "I spoke to Mr. Bonnem, I said, you should be more careful the way you speak to cus-

295

tomers—I said you should ask me my name, be careful how you speak to customers, and he said, I don't give a damn about your name and that is all I say about you black boy, and that is when I struck Mr. Bonnem." Rodgers used a broom to strike the plaintiff which had been next to the plaintiff's desk. At that time he and the plaintiff were standing between the plaintiff's desk and between the service parts desk. From the time Rodgers re-entered the Chevrolet garage until the time he struck the plaintiff was a matter of a couple of minutes. Rodgers then stated that he left without making the purchase and went back to his place of employment.

Plaintiff testified that he was not acquainted with Rodgers prior to the date of the occurrence. The plaintiff further testified that he noticed a car parked at the entrance of the throat of the parking lot blocking traffic. He tried to locate who owned the automobile and it developed to be Rodgers'. The plaintiff then testified that he stated to Rodgers, "Buddy, move your car, I have got to get one in and one out." Rodgers said, "I got a name." The plaintiff then said, "I am not interested in your name, all I am interested in is getting your car moved so that we can carry on our business and get one car in and one car off the lot and one into the building." The plaintiff then testified that Rodgers was carrying on some kind of a conversation but that he didn't pay too much attention to it. Plaintiff stated that as to whether or not he used any obscene language towards Rodgers—the worse word that he remembers using was damn. Plaintiff then testified that after that conversation went on for three or four different times that he finally got to the point where he said he didn't give a damn what Rodgers' name was and that all he wanted done was for him to move his car. Plaintiff then stated that he proceeded about his business, walking into the garage service

296

department, picked up some papers and didn't watch Rodgers move his car. The plaintiff then took repair orders off his desk, and walked around the counter of the parts department and proceeded to the back entrance of the parts department. The plaintiff then stated that the last conversation that he had with Rodgers was when Rodgers again insisted that he had a name and the plaintiff told him he didn't care what his name was. At that time, the plaintiff was a couple of steps ahead of Rodgers and he heard someone say, "Look out!" and he was then struck.

■ The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused his injury. To this general rule the case of master and servant is an exception, and the negligence of the servant is imputable to the master, if the relation existed at the time and in respect to the transaction out of which the injury arose. Metzler v. Layton, 373 Ill. 88, 25 N.E.2d 60.

In the Metzler case, supra, the court held that where robbers locked the manager of a loan company in a closet and rifled safe and files, whether office manager who freed himself shortly afterwards and started in pursuit of robbers without investigating to discover what had been taken was acting for an employer so as to render employer liable for office manager shooting, off employer's premises, an innocent person, was for the jury, although only office manager's personal property had been taken.

The Metzler case, supra, at page 61 of 25 N.E.2d and pages 91–92 of 373 Ill., cites the case of Central Motor Co. v. Gallo, Texas Civil Appeal, 94 S.W.2d 821, wherein it was stated:

" 'The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business, or the care of his property, is justly held responsible when the servant, through lack

of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflects an unjustifiable injury on a third person.' "

■ ■ The law is uncontroverted that the master is liable to third persons injured by negligent acts done by his servant in the course of his employment, although the master did not authorize or know of the servant's act or neglect, or even if he disapproved or forbade it. Darner v. Colby, 375 Ill. 558, 31 N.E.2d 950. It is also well settled that in order to make a master liable for an assault committed by an alleged servant, it is necessary to show that the tort-feasor was the servant, that such relationship existed at the time of the injury, and that such relationship existed with respect to the particular transaction from which the tort arose. Shannessy v. Walgreen Co., 324 Ill. App. 590, 59 N.E.2d 330. Between these two extreme views is a middle ground of dispute, conjecture and question of fact. Cases within these extreme limits are certainly regarded as involving questions of fact. This rule was well recognized in 35 Am. Jur., Master and Servant, Sec. 556, wherein it was stated:

"Whether the extent of his departure from the scope of his employment, or the area of his service, was so unreasonable as to make of his act of deviation an independent journey of his own, rather than a mere detour or one incidental to his employment, is a question of degree which depends on the facts of the case and is a matter for the determination of the jury, unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his employment and make his conduct a complete departure from the business of the master. When the deviation and its purpose are not in dispute, and it appears beyond reasonable controversy that the pur-

298

pose had no connection with the duties of the servant, there is no liability, and it is the duty of the court to dismiss the action or direct a verdict, or, if a verdict has been rendered in favor of the plaintiff, to set it aside on motion. On the other hand, in cases where the deviation is slight and not unusual, the court may, and often will, as a matter of law, determine that the servant was still executing his master's business. *Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions."* (Emphasis ours)

Can it be said that Rodgers' acts and statements were such a departure from his employment that his master would not be liable for his acts? We think not. Of course, reasonable minds would differ greatly upon this question. Whether or not his action was a departure from his employment or was his own method of furthering his employer's interest, no matter how poorly conceived, was a proper question for the jury to determine.

■ The evidence reveals that the controversy arose when Rodgers, on a mission for his employer to buy a part, and driving his own car with the knowledge and consent of his employer, parked his car where it blocked the ingress and egress of cars to the Chevrolet parking lot. He was asked to move the car and demanded that someone else move it for him. At that point, the plaintiff who was in charge of the garage, of the mechanics and of the parking lot insisted that defendant's employee move the car himself. That resentment arose at that point is obvious. Rodgers undoubtedly became confused and frustrated personally in his efforts to do business at this establishment and in his efforts to pursue his employer's instructions to purchase the Chevrolet part. As a customer, he rightfully felt that he was entitled to some courtesy. He was a customer because his employer sent him there

299

with authority and instructions to purchase the part. Furthermore, he did not feel that a customer should be treated with such disregard and disrespect. When he re-entered the Chevrolet garage he pursued the matter. He testified he was proceeding to the parts desk to buy the part and said to the plaintiff, "You should be more careful the way you speak to customers," to which, he states the plaintiff replied and at which juncture he states he struck the plaintiff. The defendant-employer had a chance to judge and pass upon Rodgers' qualifications and the duties to be imposed upon him, prior to employment. The employer must have known his temperament, his mentality and his capacity to act under stress and unusual circumstances and, having selected him as his employee, he sent him out into the world to act in his behalf. He should, therefore, be responsible for his acts committed in and during the course of his employment, and while acting within the scope of his authority. Whether or not he was so acting at the time in question is a very disputed question of fact which should have been submitted to the twelve judges of fact, the jury.

For the reasons herein stated, the court erred in directing a verdict in favor of the employer at the close of the plaintiff's case and erred in refusing to set aside the verdict and grant a new trial. Accordingly, the judgment of the Circuit Court is reversed and remanded for a new trial as to the defendant-employer.

Judgment reversed and remanded.

CROW, P. J. and SOLFISBURG, J., concur.