(comment: 1)No. 1-99-1701

WALTER MONTGOMERY, )  Appeal from the 

)  Circuit Court of

Plaintiff-Appellant, )  Cook County.

)

)

McDONALD'S CORPORATION and PETTY MANAGEMENT )

CORPORATION, an Illinois Corporation, )  Honorable 

)  Sophia H. Hall,

Defendants-Appellees
(footnote: 1). )  Judge Presiding.

JUSTICE REID delivered the opinion of the court:

     The appellant, Walter Montgomery, appeals the trial court's grant of summary judgment.  On appeal, Montgomery contends that the appellee, Petty Management Corp. (PMC), is liable for negligence: (1) under a theory of 
respondeat
 
superior
, and (2) due to negligent hiring.  For the reasons that follow, we affirm.

     On June 18, 1994, Montgomery, who was 72 years of age, entered a McDonald's restaurant located at 7601 South
 Vincennes in Chicago, Illinois, which was owned by PMC.  As Montgomery was waiting in line to place his order, a McDonald's employee, Demetrius Holmes, who was dressed in street clothes, approached the counter and requested a drink.

     Montgomery thought that Holmes was cutting the line.  An argument between the two ensued, which escalated into a fistfight.  It is uncertain who started the fight.  Both men claim that the other threw the first punch.  The fight ended with Holmes kicking Montgomery as he lay on the floor, before people were able to separate them.  Holmes claims that after the two were separated, Montgomery pulled a knife and attempted to attack him.  Montgomery denied the allegations.  After the fight, Holmes was pulled into the back of the restaurant away from Montgomery.

     It is disputed as to whether Holmes was working when the altercation occurred.  In his deposition, Holmes stated that he had changed out of his uniform and into his street clothes because his shift had ended and he was in the process of leaving the store when the fight occurred.  Holmes was required to punch his time card whenever a shift or break started or ended.  However, on the day of the fight there were five punches on Holmes' time card.  

     Holmes' supervisor, Renee Thorpe, testified during her deposition that the altercation took place while Holmes was "off the clock."  Thorpe stated that she did not know the exact time that the fight took place.  She said that she knew Holmes was "off the clock" because approximately 15 minutes before the fight occurred she had asked Holmes to punch out because his shift had ended.

     Montgomery initially brought suit against PMC, Holmes, McDonald's Corporation, manager Earl Reeves, and assistant manager Renee Thorpe.  All defendants were granted summary judgment except Holmes, who was voluntarily dismissed.  Montgomery now appeals the grant of summary judgment as to PMC. 

     Since this appeal arises from an order granting summary judgment, the standard of review is 
de
 
novo
.  
Aetna Casualty & Surety Co. v. Allsteel, Inc.
, 304 Ill. App. 3d 34, 39 (1999).  The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2000).  In ruling on a motion for summary judgment, the trial court must view all evidence in the light most favorable to the nonmovant.  
Boldini v. Owens Corning
, 318 Ill. App. 3d 1167, 1170 (2001).

     Montgomery contends that the trial court erred in finding that Holmes was not acting within the scope of his employment at the time of the altercation.  We disagree.

     For an employer to be vicariously liable for an employee's tort under the doctrine of 
respondeat
 
superior
, the tort must have been committed within the scope of the employment.  
Pyne v. Witmer
, 129 Ill. 2d 351, 359 (1989).  No precise definition has been accorded the term "scope of employment," but broad criteria have been enunciated: 

     "(1) Conduct of a servant is within the scope of employment if, but only if: 

(a) it is of the kind he is employed to perform; 

(b) it occurs substantially within the authorized time and space limits; 

(c) it is actuated, at least in part, by a purpose to serve the master, ***

******  

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.  (Restatement (Second) of Agency §228 (1958).)"  
Witmer
, 129 Ill. 2d at 360.

     The burden is on the plaintiff to show the contemporaneous relationship between the tortious act and scope of employment.  
Witmer
, 129 Ill. 2d at 360.  If, from the papers on file, a plaintiff fails to establish an element of the cause of action, summary judgment for defendant is proper.  Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting.  
Stern v. Ritz Carlton Chicago
, 299 Ill. App. 3d 674, 677 (1998).

     In 
Bolwin v. El Kay Manufacturing Co.
, 32 Ill. App. 3d 138 (1975), the plaintiff, Earl Bolwin, brought suit to recover damages from defendant, El Kay Manufacturing Company, for personal injuries suffered in an assault committed by Willie Davis, who was employed as a shipping checker by El Kay at the time of the incident.  The trial court directed a verdict for the defendant after the plaintiff testified.  The appellate court affirmed and held 
that if the employee was not acting as his employer's agent at the time of the tort, the employer could not be held liable for the negligent act.  It is the burden of the plaintiff, who asserts the agency, to show that the employee was acting as the agent of the defendant-employer when the injury was inflicted.  The appellate court held that there was no evidence that established a connection between the checker's attack and some function that he was performing for his employer.

Bolwin
, 32 Ill. App. 3d at 141.

     Here, we have a similar situation.  In his deposition, Holmes stated that he was hired as a cook.  He stated that he mostly worked on the grill but that on occasion he would do cleaning duties and sometimes would work as a cashier when they got backed up.

     The altercation occurred on the customer side of the counter.  Holmes spent most of his time on the other side of the counter where the food was being prepared and orders were being taken.  As Holmes stated, there were occasions when he was on the customer side of the counter, but on those occasions, Holmes would have been performing cleaning duties.

     When the altercation occurred, Holmes was in the process of ordering a drink for himself.  Holmes was not cleaning, nor was he performing any of his job duties, or in the process of performing any task for his employer, for that matter.  Holmes' actions when the altercation occurred were more similar to those of a customer.  He was in line requesting a drink, just as Montgomery was in line placing his order.  Standing in line and placing an order was not one of Holmes' job duties.

     It is disputed as to whether Holmes was actually on the clock when the altercation occurred.  Whether Holmes was on the clock is irrelevant.  The mere fact that Holmes was working when the altercation occurred does not in fact mean that he was acting within the scope of his employment when the fight occurred.  Here, if we assume that Holmes, who was in street clothes, was on the clock, our holding that he was not acting in the scope of his employment would be the same.  Even if Holmes were on the clock when the fight started, we still find that he was not furthering the ends of his employer when the fight occurred.  Accordingly, the trial court's grant of defendant's motion for summary judgment on the count alleging 
respondeat
 
superior
 is affirmed.

     Montgomery next asserts as error the trial court's grant of summary judgment on the count of his complaint alleging that PMC was negligent in hiring Holmes.  Montgomery argues that there was evidence in Holmes' background which indicated that Holmes was unfit for the job of cook and that his hiring would create a foreseeable danger.  We disagree.

     Illinois law recognizes a cause of action against an employer for negligently hiring, or retaining in employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons.  
Van Horne v. Muller
, 185 Ill. 2d 299, 310 (1998).  An action for negligent hiring or retention of an employee requires the plaintiff to plead and prove: (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury.  
Muller
, 185 Ill. 2d at 311.  

     An employer's direct liability for negligent hiring and retention is distinct from its 
respondeat
 
superior
 liability for the acts of its employees.  Under a theory of negligent hiring or retention, the proximate cause of the plaintiff's injury is the employer's negligence in hiring or retaining the employee, rather than the employee's wrongful act.  
Muller
, 185 Ill. 2d at 311.

     In 
Strickland v. Communications & Cable of Chicago, Inc.
, 304 Ill. App. 3d 679 (1999), a cable television customer who was allegedly sexually assaulted in her home by a cable installer brought negligent hiring claims against the cable television provider and cable installation company.  The court held that an investigation into the employee's past would have only shown that the employee had a tendency to commit traffic violations and had lied about those violations on employment and insurance forms, and that knowledge would not have put defendant on notice that the employee might sexually assault its customers.  
Strickland
, 304 Ill. App. 3d at 683.

     In 
Giraldi v. Community Consolidated School District No. 62
, 279 Ill. App. 3d 679 (1996), the plaintiff, who was sexually molested by a school bus driver, sued the bus company and the school district for negligently hiring, investigating and supervising the bus driver.  The driver had a history of arriving late to work.  The trial court refused to submit the negligent hiring count to the jury.  
This court affirmed the trial court, holding that the only conduct the bus company could have been warned of, had it investigated the driver's past conduct, was a tendency to be late.  The court concluded that there was no factual or logical relationship between that knowledge and the attack on plaintiff.  
Giraldi
, 279 Ill. App. 3d at 692.

     Similarly, in this case, there was nothing in Holmes' background to suggest that he was unfit to work as a cook or that he had a propensity for violence.  In his deposition, Holmes admitted to being a member of a street gang, but stated that he had quit the gang prior to being hired by PMC. 

     Montgomery points out that Holmes had an arrest record.  Holmes had been arrested only once, and it did not result in a conviction.  Holmes was arrested for loitering pursuant to the City of Chicago's gang congregation ordinance.  This ordinance was subsequently struck down by both the Illinois Supreme Court and the United States Supreme Court as unconstitutional.  
City of Chicago v. Morales
, 177 Ill. 2d 440 (1997); 
City of Chicago v. Morales
, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999).

     The police report indicated that Holmes and two other men were standing on the sidewalk, flashing gang signs, yelling profanities, and impeding the flow of pedestrian traffic.  Even had he been convicted, and the ordinance upheld, the facts of the incident merely show that he was a gang member who loitered.  This in no way demonstrates that Holmes had a "particular unfitness for the position" of cook.  
Muller
, 185 Ill. 2d at 311.

     Montgomery also asserts that PMC was negligent in not obtaining Holmes' high school disciplinary record, as it contained information that would have placed PMC on notice that Holmes was unfit to work for PMC.  We first note that school student records and the information contained therein are privileged in Illinois.  105 ILCS 10/6 (West 2000); 
In re D.H.
, 319 Ill. App. 3d 771 (2001).  A prospective employee may obtain such information only with the written permission of the student's parent.  105 ILCS 10/6(a)(8)(West 2000).  Even if PMC had obtained Holmes' school records, they would not have provided support for plaintiff's position.  Holmes had been suspended once in his freshman year of high school for missing class and trespassing at another school.  This incident also involved nonviolent behavior, which would not have tended to show that Holmes would foreseeably be a danger to customers.  

     Finally, Montgomery cites as support Holmes' deposition in which Holmes stated that during his freshman year "some guys tried to jump [him]."  Holmes stated that the boys were gang bangers and that "before they really got a chance to jump on [him], one of the guys that [he] knew in the gang, you know, he stopped them from jumping on [defendant].  But they attempted to."  Being the victim of a gang assault is not an incident that would show that Holmes had a violent nature.  Montgomery has failed to point to any evidence that would have put PMC on notice that Holmes was unfit to work as a cook or that he was a danger to customers.  If we were to hold employers liable for all the conduct of every person they hire who has a less-than-perfect history, as plaintiff suggests, whole segments of our young male population will be excluded from meaningful employment.  We should keep in mind the axiom "idle hands are the devil's workshop."  The trial court is affirmed.

     Affirmed.

FOOTNOTES
1:
The case was filed with this caption.  However, only Petty Management Corporation is the appellee in this matter.

COMMENTS AND ANNOTATIONS
Comment 1:
 7/30/01 - Received mail from Reporter of Decision’s office that First District put through a correction  in 1-99-1701, filed June 22, 2001.

The appellee’s name was changed to Petty Management as the main name.  

The caption should now read as follows:

WALTER MONTGOMERY, Plaintiff-Appellant v. PETTY MANAGEMENT CORPORATION, Defendant-Appellee (McDonald’s Corporation, Defendant).

Both the WordPerfect file and the HTML file were corrected on the website

on 8/02/01.  

Laurie Barton