FIFTH DIVISION
November 5, 2010

No. 1-09-2745

| | | |
|---|---|---|
| MICHAEL K. RODMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, |
| | ) | |
| v. | ) | 07 L 4929 |
| | ) | |
| CSX INTERMODAL, INC., a corporation, | ) | The Honorable |
| | ) | Eileen M. Brewer, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE TOOMIN delivered the opinion of the court:

Here, we consider whether an employer may be vicariously liable for the negligence of an employee that occurs while the worker is *en route* to "punching out," as directed by the employer. Plaintiff, Michael Rodman, was injured in a collision with an employee of defendant, CSX Intermodal, Inc., that occurred at the premises where the employee worked. The circuit court found that the employee was not acting within the scope of employment at the time of the collision and entered summary judgment for defendant. For the following reasons, we reverse and remand for further proceedings.

BACKGROUND

Adam Wielgosiak worked for CSX Intermodal (CSX) from May 1998 to June 2006, as an airman-tie-down employee. His responsibility as an airman was to ensure that the brakes on rail cars at the Bedford railyard terminal were within federal guidelines and functional. His duties as a tie-down worker were to ensure the trailers in the railyard were stored securely in the train hitches. Wielgosiak worked in the "ramp," the secured area of the yard that contained approximately 22 railroad tracks.

Wielgosiak worked the 6:30 a.m. to 2:30 p.m. shift. One of CSX's job requirements was that the employees had to clock in before starting their shifts and clock out when ending the shift. The time clock was located in the main building. Accordingly, upon arriving each work day at CSX's property, Wielgosiak would first enter the main building and punch in. Wielgosiak was required to punch out at 2:30 p.m. If he punched out any earlier, he would be subject to disciplinary action by CSX.

There was a smaller building about 30 yards west of the main building that had a lunchroom, locker room and bathrooms, with an adjacent parking lot for CSX workers. Wielgosiak regularly parked his car in the parking lot next to the smaller building. Upon finishing their shifts, the CSX workers routinely would go to the smaller building to change and clean up and then drive their personal vehicles to the main building to punch out. CSX's management had no rule or policy prohibiting the workers from punching out in that fashion. Notably, as plaintiff maintains, some CSX personnel actually directed the workers to park near the smaller building because the company frowned upon its employees filling the parking spaces by the main building.

2

Plaintiff was employed by a CSX subcontractor to repair ceiling tile in the main building. On June 4, 2005, plaintiff left his station in the main building and proceeded to his car in the parking lot. While returning to the building, as plaintiff crossed the lot, he was struck by Wielgosiak, who was driving to the main building to punch out for the day. Plaintiff sustained a lateral tibial plateau fracture in his left knee, resulting in two surgeries. The accident occurred before Wielgosiak's 2:30 p.m. shift end time and he was still on the clock.

Thereafter, plaintiff commenced the instant cause of action for personal injuries. In turn, CSX filed a motion for summary judgment on the grounds that Wielgosiak was not acting within the scope of his employment with CSX at the time of the collision. The circuit court granted the motion and plaintiff now appeals.

ANALYSIS

Plaintiff maintains that the circuit court erred in granting summary judgment asserting that a genuine issue of material fact existed as to whether Wielgosiak was acting within the scope of his employment at the time of the accident. Prevailing practice holds that summary judgment should be granted if "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). Summary judgment is to be encouraged in the interest of prompt disposition of lawsuits, but as a drastic measure it should be allowed only when a moving party's right to it is clear and free from doubt. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). "Because the purpose of a summary judgment proceeding is to determine whether there are any genuine issues of triable fact [citation], a motion for summary judgment should be granted only when 'the pleadings,

depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.]" *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871. When determining the existence of a genuine issue of material fact, the trial court should construe pleadings, depositions, admissions, exhibits, and affidavits strictly against the movant and liberally in favor of the respondent. *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871; 735 ILCS 5/2-619 (West 2008). In appeals from summary judgment rulings, our review is *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417, 888 N.E.2d 1, 9 (2008).

An unbroken line of precedent holds that summary judgment is generally inappropriate when scope of employment is at issue. *Pyne v. Witmer*, 129 Ill. 2d 351, 359, 543 N.E.2d 1304, 1308 (1989), (citing *Dragovan v. City of Crest Hill*, 115 Ill. App. 3d 999, 1001, 451 N.E.2d 22, 24 (1983), *Metzler v. Layton*, 373 Ill. 88, 93, 25 N.E.2d 60, 62 (1939), *Kavale v. Morton Salt Co.*, 329 Ill. 445, 451-52, 160 N.E. 752, 754 (1928), *Bonnem v. Harrison*, 17 Ill. App. 2d 292, 298-99, 150 N.E.2d 383, 386 (1958), *Becker v. Brummel*, 319 Ill. App. 499, 503, 48 N.E.2d 419, 421 (1943), and 57 C.J.S. *Master & Servant* §617(a)(3) (1948)).

The principle engrafted in English common law subjected an employer to vicarious liability for his employees under the doctrine of *respondeat superior*. *Bank of America, N.A. v. Bird*, 392 Ill. App. 3d 621, 626, 911 N.E.2d 1239, 1243 (2009). The master was liable for the acts of his servant while the servant was carrying into effect the master's orders where the acts were for the good of the master and sufficiently within the course of employment. *Turberville v. Stampe*, 1 Salk. 13, 1 Ld. Raym. 264 (1698). See also W. Blackstone, Commentaries *418 ("If a servant

*** by his negligence does any damage to a stranger, the master shall answer for his neglect ***
But in these cases the damage must be done while he is actually employed in the master's service;
otherwise the servant shall answer for his own misbehavior"). In adherence to this abiding
principle, our supreme court has reaffirmed that Illinois courts look to the Second Restatement of
Agency (the Restatement) for guidance in determining whether an employee's acts are within the
scope of employment. *Adames v. Sheahan*, 233 Ill. 2d 276, 298-99, 909 N.E.2d 742, 755 (2009),
citing *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 164, 862 N.E.2d 985, 992 (2007); *Pyne*,
129 Ill. 2d at 360, 543 N.E.2d at 1309. The Restatement identifies three general criteria to be
used in making this determination:

> "(1) Conduct of a servant is within the scope of employment if, but only if:
>
>> (a) it is of the kind he is employed to perform;
>>
>> (b) it occurs substantially within the authorized time and space limits;
>>
>> (c) it is actuated, at least in part, by a purpose to serve the master ***[.]
>> ***
>
> (2) Conduct of a servant is not within the scope of employment if it is different in
> kind from that authorized, far beyond the authorized time or space limits, or too
> little actuated by a purpose to serve the master." Restatement (Second) of Agency
> §228 (1958).

See also *Pyne v. Witmer*, 129 Ill. 2d 351, 360, 543 N.E.2d 1304, 1308 (1989), quoting
Restatement (Second) of Agency, §228 (1958).

As a general rule, all three criteria of section 228 must be met in order to conclude that an

employee was acting within the scope of employment. *Bagent*, 224 Ill. 2d at 165, 862 N.E.2d at 992. Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting. *Pyne*, 129 Ill. 2d at 359, 543 N.E.2d at 1308, citing *Boehmer v. Norton*, 328 Ill. App. 17, 21, 24, 65 N.E.2d 212, 214, 215 (1946). See also *Montgomery v. Petty Management Corp.*, 323 Ill. App. 3d 514, 518, 752 N.E.2d 596, 599 (2001).

In the case *sub judice*, the circuit court's terse ruling that the evidence presented "makes it clear that the defendant, Adam Wielgosiak, was not acting within the scope of his employment," provides no insight as to which criteria the court found lacking. Plaintiff cites to workers' compensation cases, asserting that Wielgosiak was acting within the scope of employment where he was required by CSX to punch out and was still "on the clock." Additionally, plaintiff argues that CSX made Wielgosiak submit to a drug test and complete a CSX incident report, and given that he had just finished his shift and was *en route* to the main building on CSX premises, the collision was within the time and space parameters of Wielgosiak's employment. CSX counters that workers' compensation cases are wholly irrelevant to *respondeat superior* liability in a negligence action. CSX further asserts that plaintiff failed to establish the three requisite criteria as Wielgosiak had stopped doing his assigned work more than a half-hour before the collision; was driving his personal vehicle; and was "wholly outside of the time and space limits of the work assigned him" because the collision occurred in the public parking lot.

Although plaintiff places reliance on decisions in workers' compensation cases, we agree with CSX that such authorities are distinguishable in that the governing statute provides a

different basis for liability than a common law tort negligence action premised on *respondeat superior* liability. Nonetheless, our precedent in workers' compensation actions regarding whether an employee is within the scope of employment while *en route* to punch out informs our analysis.

Thus, in *Union Starch & Refining Co. v. Industrial Comm'n*, 344 Ill. 77, 176 N.E. 303 (1931), our supreme court held that an employee who was struck by a car while he was waiting to clock out from work, as required by his employer, was in the course and scope of employment and was entitled to workers' compensation benefits. Also, in *Northwestern Steel & Wire Co. v. Industrial Comm'n*, 38 Ill. 2d 441, 232 N.E.2d 293 (1967), cited by plaintiff, the claimant was held to be in the course of his employment when he was injured while crossing a fence onto the employer's property *en route* to the time clock. The employee testified that it had been his practice to use this route to and from the plant for several weeks and offered evidence that this was a customary route of ingress and egress for many other employees as well. *Northwestern Steel & Wire Co.*, 38 Ill. 2d at 444, 232 N.E.2d at 296. Notably, the court observed, " 'the courts of this jurisdiction have consistently concluded that an injury accidentally received on the premises of the employer by an employee going to or from his actual employment by a customary or permitted route, within a reasonable time before or after work, is received in the course of and arises out of the employment.' " *Northwestern Steel & Wire Co.*, 38 Ill. 2d at 445, 232 N.E.2d at 296, quoting *Chmelik v. Vana*, 31 Ill. 2d 272, 279, 201 N.E.2d 434, 439 (1964).

An identical result obtained in *Hall v. DeFalco*, 178 Ill. App. 3d 408, 413, 533 N.E.2d 448, 451-52 (1988), *appeal denied*, 125 Ill. 2d 565, 537 N.E.2d 809 (1989), where the fact that

7

plaintiff had punched out of work did not create an inference that the accident occurred outside the scope of employment. *Hall*, 178 Ill. App. 3d at 413, 533 N.E.2d at 452. The defendant's uncontroverted affidavit stated that transporting plaintiff and other employees was within the scope of employment and was part of his job, and thus the accident and any injuries sustained in the accident occurred within the scope of employment. *Hall*, 178 Ill. App. 3d at 413, 533 N.E.2d at 452.

CSX contends that the mere fact that Wielgosiak was still "on the clock" does not establish that he acted within the scope of his employment. CSX further avers that the route he took was his personal choice and not dictated by CSX and, further, that Wielgosiak was not motivated, even in part, to serve CSX at the time of the accident. Our precedent does indeed instruct that where acts complained of are committed solely for benefit of the employee, the employer will not be held liable. *Rubin v. Yellow Cab Co.*, 154 Ill. App. 3d 336, 338, 507 N.E.2d 114, 115 (1987).

Yet, in determining whether a purpose of the employer was being served at the time of the tort, the Restatement has utilized the long-standing frolic vs. detour analysis. See *Pyne*, 129 Ill. 2d at 360-61, 543 N.E.2d at 1309. "A detour occurs where the employee's deviation for personal reasons is seen as sufficiently related to the employment." *Stern v. Ritz Carlton Chicago*, 299 Ill. App. 3d 674, 677, 702 N.E.2d 194, 196 (1998), citing *Laird v. Baxter Health Care Corp.*, 272 Ill. App. 3d 280, 288, 650 N.E.2d 215, 221 (1995). In contrast, "[a] frolic occurs where the employee's personal business is seen as unrelated to employment." *Stern*, 299 Ill. App. 3d at 677, 702 N.E.2d at 196, citing *Laird*, 272 Ill. App. 3d at 288, 650 N.E.2d at 221.

Whether the employee's conduct was so unreasonable as to make his act an independent act of his own, rather than a mere detour or one incidental to employment, is a question of degree which depends upon the facts of the case. *Bonnem v. Harrison*, 17 Ill. App. 2d 292, 298, 150 N.E.2d 383, 386 (1958). It is therefore axiomatic that this question should be decided by a jury " 'unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his employment and make his conduct a complete departure from the business of the master.' " *Davila v. Yellow Cab Co.*, 333 Ill. App. 3d 592, 601, 776 N.E.2d 720, 728 (2002), quoting *Bonnem*, 17 Ill. App. 2d at 298, 150 N.E.2d at 386. However, where an employee's deviation from the course of employment is uncertain in extent and degree, or where surrounding circumstances leave room for a legitimate inference as to whether the employee was still engaged in the employer's business, the question of an employer's vicarious liability for an employee's torts is for a jury. *Pyne*, 129 Ill. 2d at 361-62, 543 N.E.2d at 1309.

CSX stridently maintains that Wielgosiak's action in driving through the lot to the main building to punch out did not serve CSX and, given that it was raining that day, Wielgosiak's "sole motivation was a desire to stay dry." Yet, CSX blithely ignores the undisputed fact that punching out was a CSX requirement that Wielgosiak was fulfilling as the accident occurred. We find no counteraffidavit on this point from CSX in contravention of this requirement. Based on these facts, we are unable to conclude that no reasonable person could find that Wielgosiak was motivated, at least in part, to serve the interest of CSX in punching out.

As noted, CSX further asserts that Wielgosiak was "wholly outside of the time and space limits of the work assigned him" because he had completed his work about a half-hour prior to

heading to punch out, and that the collision took place in the company's public parking lot, as opposed to the ramp area. However, this assertion avails us nothing as it nonetheless is clear that part of Wielgosiak's assigned work requirements included punching out. Further, although the accident did not take place specifically in the ramp area, the time clock was located in the main building, which was also part of CSX premises. "An employee may combine personal business with the employer's business at the time of negligence, yet the employer will not necessarily be relieved of liability on that account [citation], and the fact that an employee is not immediately and single-mindedly pursuing the employer's business at the time of negligence but has deviated somewhat therefrom [citation], or that the employee's conduct was not authorized [citation], does not necessarily take the employee out of the scope of employment." *Pyne*, 129 Ill. 2d at 361, 543 N.E.2d at 1309. Thus, merely because Wielgosiak had technically finished his work in the confines of the railyard prior to punching out does not compel a determination that he was outside the scope of his employment.

Additionally, although CSX maintains it had a rule against employees driving their personal vehicles in the railyard, that rule did not embrace the parking lot where plaintiff's injury occurred. Moreover, evidence in the trial record established Wielgosiak took a customary route to punch out, as other employees also took this route, and it was not specifically forbidden by CSX. Regardless, an employer is not relieved from liability simply because an employee does a forbidden act while engaged in the business of the employer. *Maras v. Milestone, Inc.*, 348 Ill. App. 3d 1004, 1007, 809 N.E.2d 825, 828 (2004), citing *Wilson v. Clark Oil & Refining Corp.*, 134 Ill. App. 3d 1084, 1090-91, 481 N.E.2d 840, 844 (1985), citing Restatement (Second) of

Agency §230 (1958). The fact remains that Wielgosiak was required to punch out and was fulfilling that requirement at the time of the accident.

Furthermore, we find defendant's citations in reliance on the foregoing principles are readily distinguishable. In *Montgomery v. Petty Management Corp.*, 323 Ill. App. 3d 514, 752 N.E.2d 596 (2001), we held that whether the employee was on the clock was irrelevant, because the mere fact that he was working when he became involved in a physical altercation does not in fact mean that he was acting within the scope of his employment. *Montgomery*, 323 Ill. App. 3d at 518-19, 752 N.E.2d at 599. We reasoned that even if he were on the clock when the fight started, he still was not furthering the ends of his employer during the course of that impermissible activity, and accordingly, we affirmed the trial court's grant of defendant's motion for summary judgment. *Montgomery*, 323 Ill. App. 3d at 519, 752 N.E.2d at 599.

The facts of *Adames* are even further distinguished from the facts at bar. In *Adames*, the administrators of the estate of a child who was killed by a friend playing with the service weapon of his father, a correctional officer, sued the sheriff based on a *respondeat superior* theory. In rejecting liability, our supreme court found that no reasonable person could conclude that the father was acting within the scope of his employment when he negligently stored his weapon at home, as there was no scintilla of evidence that the deputy was motivated to serve his employer. *Adames*, 233 Ill. 2d at 305-06, 909 N.E.2d at 758-59. Conversely, here, Wielgosiak was required to punch out. It cannot be said that no reasonable person could conclude that Wielgosiak's conduct in endeavoring to punch out was not motivated, at least in part, by his desire to serve CSX.

11

No. 1-09-2745

Therefore, we find that summary judgment was inappropriate on the facts of this case. We simply cannot say that no reasonable person could conclude as a matter of law that Wielgosiak was not acting within the course of employment. See *Pyne*, 129 Ill. 2d at 359, 543 N.E.2d at 1308 ("Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting").

CONCLUSION

For the foregoing reasons, we reverse and remand the matter to the circuit court for further proceedings, including trial.

Reversed and remanded.

HOWSE and LAVIN, JJ., concur.

No. 1-09-2745

| Please Use Following Form: | |
|---|---|
| Complete TITLE of Case | MICHAEL K. RODMAN,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>CSX INTERMODAL, INC.,,<br><br>Defendant-Appellee. |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | 1-09-2745<br>Appellate Court of Illinois<br>First District, FIFTH Division<br><br>November 5, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE TOOMIN delivered the opinion of the court:<br><br>HOWSE and LAVIN, JJ.,       concur [s]<br><br>      dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable    Eileen M. Brewer,   Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Plaintiff-Appellant,       Jeffrey S. Jordan<br>O'CONNOR & NAKOS, LTD.<br>120 North LaSalle Street, 35th Floor<br>Chicago, IL 60602<br>312/546-8100<br><br>Defendant-Appellee,       Evan B. Karnes II<br>O'Connor & Karnes<br>The Page Brothers Building<br>177 North State Street<br>Chicago, IL 60601<br>312/629-8900 |

13