SECOND DIVISION

August 20, 2002

No. 1-01-4366

HERMAN DAVILA,

Plaintiff-Appellant, 

v.

YELLOW CAB COMPANY,

Defendant-Appellee.

))))))

)))

))

Appeal from the Circuit Court of 

Cook County

98 L 5513

Honorable

Barbara A. McDonald and

Bill Taylor,

Judges Presiding

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff Herman Davila appeals an order of the circuit court of Cook County granting summary judgment in favor of defendant Yellow Cab Company.  

In a first amended complaint, Davila alleged he was struck and injured by a taxicab owned by Yellow Cab and negligently operated by defendant Thomas Williams on October 31, 1996, in the vicinity of the intersection of LaSalle and Lake Streets in Chicago.  Davila alleged that he was a State of Illinois police officer standing on Lake Street due to traffic congestion when he was struck by Williams' cab and dragged for several feet.  Davila also alleged the incident caused him severe and permanent bodily injuries, pain and suffering, medical expenses, and loss of his usual occupation.  Davila complained that Yellow Cab was responsible for his damages due to a principal/agent or master/servant relationship with Williams.  In a separate count, which was dismissed and is not subject to this appeal, Davila alleged that Yellow Cab had negligently entrusted Williams with the taxicab.  

Yellow Cab answered and moved for summary judgment, contending that its written contract with Williams established he was an independent contractor and that Williams' conviction for battery, an intentional crime, in connection with the incident at Lake and LaSalle Streets established Williams was not acting within the scope of any agency or employment relationship.  Yellow Cab concluded it was therefore not responsible for Williams' actions.

The trial court granted Yellow Cab's motion for summary judgment, finding that, as a matter of law, Williams was not an agent or employee of Yellow Cab, because Yellow Cab was leasing licensed cabs and there was no indication that it had a right to control Williams' operation of the cab.  The trial court declined to follow 
Yellow Cab Co. v. Industrial Comm'n
, 124 Ill. App. 3d 644, 464 N.E.2d 1079 (1984), or 
Yellow Cab Co. v. Industrial Comm'n
, 238 Ill. App. 3d 650, 606 N.E.2d 523 (1992), and indicated that these cases are limited to questions of entitlement to workers' compensation benefits.  In both cases, 
the courts rejected Yellow Cab's independent contractor argument and found the existence of an employer-employee relationship under a written agreement and facts that are substantially similar to those in the case at bar.

In this appeal, Davila argues (1) a principal/agent relationship existed or was sufficiently disputed to preclude summary judgment in Yellow Cab's favor; and (2) Yellow Cab can be held liable for tortious conduct in furtherance of its business, regardless of whether the conduct was intentional or criminal.

Summary judgment permits the trial court to determine whether any genuine issue of material fact exists, but it does not permit the trial court to try such an issue.  
Pyne v. Witmer
, 129 Ill. 2d 351, 357-58, 543 N.E.2d 1304 (1989).  Summary judgment is encouraged in the interest of the prompt disposition of lawsuits, but it is a drastic measure which should be granted only when the pleadings, depositions, affidavits, and admissions on file, when reviewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the moving party's right to judgment is clear and free from doubt.  
Pyne
, 129 Ill. 2d at 358.  " 'Summary judgment must be awarded with caution to avoid prempting a litigant's right to trial by jury or the right to fully present the factual basis of a case where a material dispute may exist ***.' [Citation.]" 
Schrager v. North Community Bank
, 328 Ill. App. 3d 696, 703, 767 N.E.2d 376 (2002).  " 'A triable issue of fact exists where there is a dispute as to a material fact or where, although the facts are not in dispute, reasonable minds might differ in drawing inferences from those facts.' [Citation.]" 
Schrager
, 328 Ill. App. 3d at 703.

In cases involving summary judgment motions, we conduct a 
de
 
novo
 review of the evidence in the record.  
Schrager
, 328 Ill. App. 3d at 702.  " '[W]e are free to consider any pleadings, depositions, admissions, and affidavits on file at the time of the hearing regardless of whether facts contained therein were presented to the trial court in response to the motion for summary judgment.' [Citation.]"  
Schrager
, 328 Ill. App. 3d at 703.  Reversal " 'is warranted where, on review, a material issue of fact or an inaccurate interpretation of the law exists.' [Citation.] "  
Schrager
, 328 Ill. App. 3d at 703.

We disagree with the trial court's conclusion that 
Yellow Cab Co. v. Industrial Comm'n
, 124 Ill. App. 3d 644, 464 N.E.2d 1079 (1984) (
Yellow Cab I
), and 
Yellow Cab Co. v. Industrial Comm'n
, 238 Ill. App. 3d 650, 606 N.E.2d 523 (1992) (
Yellow Cab II
), are limited to questions of entitlement to workers' compensation benefits.  The standard used in determining whether an employer-employee relationship exists in a workers' compensation context is no different from the standard used in a vicarious liability context.  
Gunterberg v. B&M Transportation Co.
, 27 Ill. App. 3d 732, 737-38, 327 N.E.2d 528 (1975) (standard used to determine employee or independent contractor status is not affected by whether question arises in context of workers' compensation coverage or 
respondeat superior
); 
Hamilton v. Family Record Plan, Inc.
, 71 Ill. App. 2d 39, 47-48, 217 N.E.2d 113 (1966) (determination of employee or independent contractor status is the same in workers' compensation and 
respondeat superior
 cases).

In 
Yellow Cab I
, the court indicated that a lease agreement between Yellow Cab and a cab driver disclaiming an employer-employee relationship was not dispositive of the cab driver's status.  
Yellow Cab
, 124 Ill. App. 3d at 647.  See also 
Tansey v. Robinson
, 24 Ill. App. 2d 227, 234, 164 N.E.2d 272 (1960) (written contract between grocery store and delivery man not conclusive of their relationship).  The nature of the relationship "depends upon the actual practice followed by the parties and, as a general rule, becomes a mixed question of law and fact to be submitted upon proper instructions to a jury."  
Tansey
, 24 Ill. App. 2d at 233-34.  The question of whether a relationship of employer and employee, principal and agent, or owner and independent contractor existed depends upon the facts of a given case.  
Tansey
, 24 Ill. App. 2d 234.  "Unless those facts clearly appear, the relationship cannot become purely a question of law."  
Tansey
, 24 Ill. App. 2d at 234.

" 'No one factor may determine what [the] relationship is between parties in a given case.  It may be necessary to consider a number of factors with evidentiary value, such as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and who provides the tools, materials, or equipment.  Of these factors the right to control the manner in which the work is done is the most important in determining the relationship.' "  
Yellow Cab II
, 238 Ill. App. 3d at 652, quoting 
Morgan Cab Co. v. Industrial Comm'n
, 60 Ill. 2d 92, 97-98, 324 N.E.2d 425 (1975).

Additionally, it is the right of control, not the fact of control, that is the principal factor in distinguishing a servant from a contractor.  
Gunterberg
,  27 Ill. App. 3d at 738.

Accordingly, in 
Yellow Cab I
, the court found that a number of factors established that Yellow Cab had a right to control the manner in which work was done under a 24-hour cab lease.  
Yellow Cab
, 124 Ill. App. 3d at 647.  All of the cabs were uniform in appearance and had the company's name and telephone number on them.  
Yellow Cab maintained the right to terminate or refuse to renew the 24-hour lease.  The driver was not permitted to sublet the cab, was instructed to purchase his gas at the company garage, and was required to report mileage at the end of the lease period.  Yellow Cab derived goodwill from the public presence of the well-maintained cabs.  Roadmen filled out observation reports on the condition of the cabs.  Yellow Cab performed routine maintenance and repairs, and if the cab broke down within a six-county area, Yellow Cab would make the necessary repairs or tow the cab and provide another cab if one were available.  

Based on these facts, the court concluded that despite the lease agreement's employment relationship disclaimer, the record clearly indicated that Yellow Cab's interest in its cabs did not cease with their leasing, but extended to their operation (
Yellow Cab
, 124 Ill. App. 3d at 647), and that Yellow Cab was in the business of operating a fleet a cabs for public use (
Yellow Cab
, 124 Ill. App. 3d at 648).  Accordingly, there was sufficient evidence to conclude the cab driver was an employee of Yellow Cab.  
Yellow Cab
, 124 Ill. App. 3d at 648.

Yellow Cab II,
 238 Ill. App. 3d 650, 606 N.E.2d 523, bears even more resemblance to the instant case, because it also involved a long-term lease, rather than the series of 24-hour leases in 
Yellow Cab I
.  
The court stated:

"Unquestionably, several factors which other courts have relied upon in analyzing the control factor, such as the requirement that gasoline be purchased and repairs done at the employer's garage, use of radio assignments or control of shifts and assignments, are not present in this case.  However, several of the most important factors which courts have relied upon in determining that an employer/employee relationship existed between the parties do indeed exist in the present case.  Here, claimant was required to keep the vehicle in running condition, and the employer had the right to inspect the vehicle, sign and meter at a time and place the employer designated.  Claimant was required to keep the employer's name upon the vehicle and could not paint it any color other than yellow.  The employer was entitled to terminate the lease 'with or without cause,' a provision that suggests an employer/employee relationship.  Subletting of the vehicle to any other than an employer-authorized individual (with a valid public chauffeur's license) was prohibited."  
Yellow Cab
, 238 Ill. App. 3d at 654.

In light of these facts, 
Yellow Cab II
 concluded that the cab company was not simply leasing vehicles, but was in the business of providing a fleet of cabs for public use.  
Yellow Cab
, 238 Ill. App. 3d at 654-55.  The court declined to respond to Yellow Cab's assertion that it did not insist that the cab driver actually operate the vehicle as a taxicab, because this assertion  contradicted the express language of the lease ("Lessee thereby and hereby leases the Automobile as a taxicab"), and the very reason 
for some of the lease's requirements.  
Yellow Cab
,
 
238 Ill. App. 3d at 654-55.  Accordingly, the court affirmed the determination of an employer-employee relationship between Yellow Cab and the cab driver.  
Yellow Cab
, 238 Ill. App. 3d at 655.

In the instant case, the relationship between Yellow Cab and Williams was described in four documents.  The first was entitled "Yellow Cab Company Driver Information Packet" and was given to Williams as part of his orientation to the company.  During a deposition on January 8, 2001, Jeffrey Feldman, Yellow Cab's president between February 1982 and March 2000, stated that the orientation consisted of a three-hour "indoctrination addressing operations of a Yellow Cab," and it was required of all Yellow Cab drivers regardless of whether they had been driving for another company or not.  Feldman estimated that Yellow Cab owned 2,246 of the 5,700 cabs operating in Chicago in 1996.  The second document was entitled "Terms and Conditions," and Feldman referred to this contract as a "master lease" during his January 8, 2001 deposition.  The third and fourth documents were entitled "Daily Lease with Option to Buy" (a two-year contract) and "Service Agreement."

According to these documents and Feldman's deposition testimony, Williams' relationship with Yellow Cab was similar to the driver's relationship with Yellow Cab in 
Yellow Cab II
.  Although Yellow Cab did not require Williams to work any shifts or locations, Yellow Cab provided the cab, cab medallion, meter, and taxi dome light on the roof of the vehicle, and specified it was leasing the vehicle to Williams as a "taxicab."  The cab was part of uniformly painted fleet of nearly half the cabs operating in Chicago in 1996, and Williams was prohibited from changing its appearance in any way.  Williams was also to be the sole driver, unless Yellow Cab authorized a sublettor.  Williams was instructed to issue meter-printed or hand-completed receipts bearing Yellow Cab's name, and to accept Yellow Cab coupons and charges to Yellow Cab's corporate and individual charge accounts.  Williams was asked to use the cab's heater and air conditioner for the comfort of his passengers, to turn the cab's radio down or off when a passenger entered the cab, and to clean the interior of the cab often, and he was "encouraged" to use Yellow Cab's car washing facilities.  Williams was required to keep the vehicle and meter in satisfactory repair and running condition, and to report any accidents to Yellow Cab's insurer.

Furthermore, Yellow Cab's influence over Williams' operation of the cab did not stop with these requests, instructions and prohibitions.  Yellow Cab reserved the right to inspect the vehicle and meter at any time and place Yellow Cab designated.  According to Feldman, Yellow Cab placed a bumper sticker on the back of the cab that read "How Am I Driving" and provided Yellow Cab's telephone number.  Yellow Cab also reserved the right to terminate the lease under a number of circumstances, including if Williams violated "any term, provision or condition of [the Daily] Lease or the Service Agreement," or failed to follow "any applicable laws, ordinances and governmental rules and regulations."

Accordingly, we disagree with the trial court's conclusion that, "There's nothing to indicate that the cab company in any way had control over the way in which the driver did his business."  We also disagree with the trial court's determination that Yellow Cab was "leasing the cab, and from there, the cab driver takes it and does whatever he wants with it," and "as to how he goes about his business, [there isn't] anything that really would even *** raise a question of fact about whether he's an agent."  Based on even fewer indications of a right to control, 
Yellow Cab II 
concluded that Yellow Cab was not simply in the business of leasing vehicles (
Yellow Cab
, 238 Ill. App. 3d at 654) and that an employer-employee relationship existed (
Yellow Cab
, 238 Ill. App. 3d at 655).  

The trial court emphasized that Williams paid Yellow Cab a flat leasing fee regardless of what Williams earned while operating the taxicab, and appears to have been referring to the analysis in 
Metro East Cab Co. v. Doherty
, 302 Ill. App. 3d 402, 705 N.E.2d 947 (1999), which concluded that a cab company and driver were lessor and lessee rather than employer and employee because there was no evidence of "economic interdependence" between them.  
Metro East
 is a Fifth District opinion and therefore not binding authority in the First District.  
State Farm Fire & Casualty Co. v. Yapejian
, 152 Ill. 2d 533, 605 N.E.2d 539 (1992).  We do not consider 
Metro East
 relevant, particularly when 
Yellow Cab I and Yellow Cab II
, First District cases, involve the same cab company and substantially similar contracts and facts as the case at bar.

Based on the reasoning in 
Yellow Cab I and Yellow Cab II 
and the facts disclosed by the record, we conclude that material questions of fact exist as to whether Williams was an employee or agent of Yellow Cab on October 31, 1996, and that summary judgment on this issue was erroneous.  
Pyne
, 129 Ill. 2d at 358 (summary judgment is warranted when there is no genuine issue as to any material fact and the moving party's right to judgment is clear and free from doubt); 
Schrager
, 328 Ill. App. 3d at 703 (triable issue of fact exists where there is a dispute as to a material fact or where reasonable minds might differ in drawing inferences from undisputed facts)
.

The trial court did not make any specific findings about whether Williams was acting within the scope of employment, but questioned whether Yellow Cab could be held liable for Williams' conduct after Williams was convicted of an intentional crime.  Yellow Cab contends that Williams was convicted of battery in conjunction with the incident at Lake and LaSalle Streets, and cites 
American Family Mutual Insurance Co. v. Savickas
, 193 Ill. 2d 378, 739 N.E.2d 445 (2000), for the proposition that Williams is estopped from relitigating the issue of intent in this subsequent civil proceeding.

It is unclear from the record whether Williams was in fact convicted, or even charged, with any crime as a result of the incident at Lake and LaSalle Streets.  Yellow Cab has not provided evidence of any criminal proceedings and is citing only its own motion for summary judgment in support of this claim.  The motion refers to an attached "Report of [Criminal] Proceedings," but there are no attachments to the motion in the record on appeal.  In contrast, in 
Savickas
, 193 Ill. 2d 378, 
the moving party provided a certified copy of Savickas' conviction for first degree murder, a copy of the appellate court opinion affirming that conviction, and transcripts of Savickas' trial testimony in which Savickas admitted that the gun did not go off accidentally and that he had intentionally aimed and fired the gun at the decedent.  
Savickas
, 193 Ill. 2d at 381-82.  Here, Yellow Cab's unsupported statements do not adequately establish that Williams litigated the issue of intent and, therefore, is now prohibited from relitigating the issue in this action.  Furthermore, collateral estoppel can only be asserted against a party who was a party or was in privity with a party to a prior adjudication.  
Savickas
, 193 Ill. 2d at 387; 
Illinois State Chamber of Commerce v. Pollution Control Board
, 78 Ill. 2d 1, 7, 398 N.E.2d 9 (1979).  
Savickas
 does not stand for the proposition that one third party may use a criminal conviction against another third party in a later civil proceeding.

More importantly, under the doctrine of 
respondeat superior
, an employer can be held vicariously liable for the tortious acts of its employees (
Pyne
, 129 Ill. 2d at 359), including negligent, wilful, malicious, or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer (
Brown v. King
, 328 Ill. App. 3d 717, 722, 767 N.E.2d 357 (2001)).  "Whether or not the employee's act is intentional or merely negligent is not the defining factor.  Instead, the focus is on whether or not the act was performed within the 'scope of employment'."  
Hargan v. Southwestern Electric Cooperative, Inc.
, 311 Ill. App. 3d 1029, 1032, 725 N.E.2d 807 (2000).  Thus, assuming that Williams was Yellow Cab's employee, the dispositive issue was not whether Williams acted intentionally, but whether his intentional, negligent, or even criminal acts were within the scope of employment.

The term "scope of employment" had not been precisely defined, but Illinois uses the following criteria in determining whether an act is within the scope of employment:

" '(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, ***

***

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.' "  
Pyne
, 129 Ill. 2d at 359-60, quoting Restatement (Second) of Agency §228 (1958).

The burden is on the plaintiff to show the contemporaneous relationship between the tortious act and the scope of employment.  
Pyne
, 129 Ill. 2d at 360.   This relationship can be proved through circumstantial evidence.  
Pyne
, 129 Ill. 2d at 360. "If, from the papers on file, a plaintiff fails to establish an element of the cause of action, summary judgment for the defendant is proper."  
Pyne
, 129 Ill. 2d at 358.  "Summary judgment is generally inappropriate when scope of employment is at issue."  
Pyne
, 129 Ill. 2d at 359.  "Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting."  
Pyne
, 129 Ill. 2d at 359.  Whether the employee's conduct was so unreasonable as to make his act an independent act of his own, rather than a mere detour or one incidental to employment, is a question of degree which depends upon the facts of the case.  
Bonnem v. Harrison
, 17 Ill. App. 2d 292, 298, 150 N.E.2d 383 (1958).  This question should be decided by a jury, "unless the deviation is so great, or the conduct so extreme, as to take the servant outside the scope of his employment and make his conduct a complete departure from the business of the master."  
Bonnem
, 17 Ill. App. 2d at 298.

Accordingly, in 
Bonnem
, the court concluded that a jury should decide whether an employee, on an errand for his employer to pick up an automobile part from a garage, was acting within the scope of his employment when he struck one of the garage employees with a broom.  
Bonnem
, 17 Ill. App. 2d 292.  In 
Rubin v. Yellow Cab Co.
, 154 Ill. App. 3d 336, 507 N.E.2d 114 (1987), the court held that a cab driver who did not have a passenger was clearly not acting within the scope of employment when he left the cab and allegedly assaulted another driver who had inadvertently obstructed the taxi's path.  The court stated that a cab driver "is basically relegated to transporting individuals from one destination to another" and is therefore unlikely to attack a person who is neither a passenger nor connected with the cab company.  
Rubin
, 154 Ill. App. 3d at 339.  Thus, the cab driver's assault of another driver was a deviation from the conduct generally associated with driving a cab (
Rubin
, 154 Ill. App. 3d at 339) and, therefore, outside the scope and not in furtherance of the cab company's business (
Rubin
, 154 Ill. App. 3d at 339-40).

We find, after a 
de novo 
review of the record, that material questions of fact exist as to whether Williams was acting within the scope of an employment or agency relationship when Davila was injured on October 31, 1996, because in contrast to 
Rubin
, Williams was in the cab, transporting a passenger, when the incident occurred.

At a deposition taken on March 28, 2001, Williams described the October 31, 1996, incident as follows.  At approximately 8:30 a.m., Williams picked up a fare at the East Bank Club who wished to go to Dearborn and Monroe Streets, or a few blocks further to Dearborn Street and Jackson Boulevard.  Just after Williams turned from southbound LaSalle Street onto eastbound Lake Street, traffic became blocked by three armored cars attempting to maneuver into a driveway at the James R. Thompson Center.  Williams sounded his horn, and a person appeared from the sidewalk or curb behind the armored cars and walked toward the cab.  Within a few seconds, the person reached the cab, opened the front passenger door, took one of Williams' two licenses from a display on the right side of the dashboard, and stood next to the open door.  Williams thought the person was an armored car driver.  By then, the armored cars had moved, and Williams was blocking traffic.  He felt threatened and uncertain about what else the person might do, and he wanted to secure the car from further intrusion.  He also realized that he could not drive the cab without both licenses. With the cab still in gear, Williams told the person he was going to pull to the curb.  Williams then moved forward a few feet to get the person out of the doorway and closed the cab door.  As Williams pulled forward, he could see the person was standing in the street and was not touching the cab in any way.  He parked the cab "pretty close" to the Thompson Center driveway, or even "sticking out [of it]," and had traveled a distance of only 15 to 25 feet.  Williams realized he must be dealing with a local or suburban police officer.  He told his fare, "I guess you'll have to get another cab," and the passenger left without paying.  Williams got out of the cab and walked to the back of it to "find out what was going on, what the problem was," and was arrested for battery.

Additionally, Williams' assertion that there was no contact between his cab and Davila was supported by (a) Williams' response to an interrogatory indicating that there was no damage to the cab, (b) 12 photographs of the cab which did not show any apparent damage, and (3) the deposition statement of Feldman, Yellow Cab's president, that "The vehicle was not damaged and was not repaired to the best of [his] knowledge."

In a September 27, 1999, deposition, Davila provided a different version of incident which nonetheless corroborated that Williams was inside the cab, transporting a passenger, at the time.  Davila was sitting outside the Thompson Center in a police vehicle, when he was asked to assist a fellow officer who was directing armored vehicles into the Thompson Center's driveway.  Williams' cab was directly behind the armored cars, and Williams was sounding his horn, screaming, and inching forward, ignoring the officer's instructions to wait quietly.  The armored cars had blocked traffic for about 10 minutes, and Williams had been sounding his horn steadily for about two minutes when Davila approached the cab.  Davila was wearing a dark blue uniform shirt and slacks, black tie, badge, State of Illinois Police patches, police radio, mace, handcuffs, and weapon, but was not wearing the uniform's "Smokey The Bear" hat.  The windows of the cab were rolled up, and Williams had a passenger.  Davila knocked on the front passenger door, and within one second opened it, bent down, and talked to Williams.  Wiliams swore at Davila and "constantly" told Davila to "get out, get out of the cab."  Davila indicated that he was going to issue a citation for "inching up and continu[ing to blow] the horn when *** told not to."  Williams' passenger never said a word.  The cab was still for about a minute after Davila opened its door, but when Davila reached for Williams' identification card on the right side of the dashboard, Williams shifted from neutral to drive and stepped on the gas pedal.  The armored vehicles were no longer blocking Lake Street, and Williams pulled the cab forward at five to six miles an hour.  Davila got out of the cab, but held onto the door with his right hand and onto to the roof with his left hand, while running along with it.  Davila was not dragged.  When Williams slowed down from 15 or 18 miles per hour to almost a complete stop, Davila let go and sat down because he was in pain.  Williams' cab had traveled 25 feet.  Williams drove off but was stopped and arrested at Clark and Lake Streets, where Williams' passenger got out of the cab.

Although Williams and Davila gave different versions of their meeting on October 31, 1996, both indicated that Williams was in the cab, transporting a passenger at the time.  An act is within the scope of employment if it (a) is of the kind the person is employed to performed, (b) occurs substantially within the authorized time and space limits, and (c) is actuated, at least in part, by a purpose to serve the master.  
Pyne
, 129 Ill. 2d at 360.  Pursuant to a lease with Yellow Cab, Williams was transporting an individual from one Chicago destination to another, when the public street became blocked, and a stranger opened the cab's door and intruded into the vehicle.  There is a dispute as to precisely what occurred next.  We indicated, above, that there are material questions of fact as to whether Williams was Yellow Cab's agent or employee.  We also find that there are material questions of fact as to whether Williams' conduct deviated so greatly from his duties as a Yellow Cab driver, or was so extreme that he was no longer performing the business of a Yellow Cab driver.  See 
Bonnem
, 17 Ill. App. 2d at 298. 

Accordingly, we reverse the trial court's entry of summary judgment in Yellow Cab's favor on the issue of agency, and we remand this case for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GORDON and CAHILL, JJ., concur.