In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1493

BONNIE JONES, as the parent and next friend of
Zachary Jones, a minor, ZACHARY JONES, a minor,
next friend of Bonnie Jones, and JOSEPH PRESSLEY,

*Plaintiffs-Appellants,*

*v.*

PATRICK & ASSOCIATES DETECTIVE AGENCY, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 5536—**Paul E. Plunkett**, *Judge.*

ARGUED JANUARY 4, 2006—DECIDED MARCH 17, 2006

Before POSNER, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* On what would be his last night as
a security guard at the Prairie View apartment complex in
the city of North Chicago, Illinois, Lewis Pratt had a run-in
with 19-year-old Joseph Pressley, who Pratt noticed coming
out of a unit in one of the apartments with what appeared
to be a bag of marijuana. This, we are told, "violated one or
more of Prairie View's residential rules" (not to mention
state law), rules Pratt was required to enforce. When Pratt,
wearing his official security guard uniform, confronted
Pressley, an altercation occurred and Pressley took off

running, leaving his car behind. Later that night, when Pressley returned to the apartment complex to retrieve his car, Pratt, while still on duty, tried to apprehend him. In the ensuing scuffle, Pratt's finger got slammed in Pressley's car door. Pressley drove away, and Pratt reported the incident to the North Chicago police, something he was required to do by his employer, the Patrick & Associates Detective Agency.

The police soon spotted Pressley's car, arrested him, and brought him to the police station, which was across the street from the apartment complex. A North Chicago police officer called the security station at the Prairie View complex and Pratt was informed that Pressley was in custody. According to Pressley, things took an ugly turn when Pratt came by the station to drop off his written report: somehow persuading the on-duty officer, Christopher Berg, to let him into the holding cell area, Pratt proceeded to vent his anger over the earlier encounter with the help of his billy club and a can of mace. His sense of proportion was matched only by his sense of direction: he got around to beating Pressley only after mistakenly thrashing a 14-year-old kid in a nearby cell, Zachary Jones, who had nothing to do with the events at Prairie View.

In the lawsuit that followed, Jones and Pressley presented federal claims under 42 U.S.C. § 1983 against Officer Berg and North Chicago and state law claims for battery and negligence against Pratt and his employer, Patrick & Associates (which fired Pratt within days of the beatings). The first two defendants ultimately agreed to a settlement, as did Pratt after he was found liable at a bench trial. Patrick & Associates, on the other hand, was granted summary judgment. The district court found the company not liable for Pratt's actions under the doctrine of *respondeat superior*, ruling that those actions were not within the scope of Pratt's employment. *See Restatement (Second) of Agency* § 219(1) (1958); *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989). And the court

found no evidence supporting the allegation that the company was negligent in its training or supervision of Pratt.

On appeal, Jones and Pressley do not challenge the court's conclusion that Patrick & Associates was not negligent. They do argue, though, that a jury should have been allowed to decide whether Pratt's actions were within the scope of his employment. That question is governed by state law,[1] and Illinois courts typically decide scope-of-employment issues in line with the principles outlined in the *Restatement of Agency*. *See, e.g.*, *Wright v. City of Danville*, 675 N.E.2d 110, 118 (Ill. 1996); *Pyne*, 543 N.E.2d at 1308; *Davila v. Yellow Cab Co.*, 776 N.E.2d 720, 727 (Ill. App. Ct. 2002). To wit:

> "(1) Conduct of a servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind he is employed to perform;
> >
> > (b) it occurs substantially within the authorized time and space limits;
> >
> > (c) it is actuated, at least in part, by a purpose to serve the master, and
> >
> > (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master."

*Restatement* §228.

---

[1] The district court had supplemental jurisdiction over the state law claims. It is true that the federal court could have relinquished jurisdiction over these claims after the federal claims against North Chicago and Officer Berg were resolved. But that was a matter of discretion, and given the time invested in the case, the court was not obligated to do so. And the continued exercise of supplemental jurisdiction over the state law claim has never been challenged by anyone involved in the case.

A review of Illinois cases suggests that in practice, these conditions are somewhat flexible (or, in the words of the Supreme Court, "indefinite and malleable," *Farragher v. City of Boca Raton*, 524 U.S. 775, 797 (1998)). In *Davila*, for example, a taxi driver who was stuck in traffic deliberately ran into a police officer and dragged him for 25 feet. The court concluded that a jury could reasonably find the incident to be within the scope of the driver's employment. *See Davila*, 776 N.E.2d at 728. Similarly, in *Bonnem v. Harrison*, 150 N.E.2d 383 (Ill. App. Ct. 1958), a mechanic on an errand to an auto parts store hit the store's owner with a broom handle in response to a racial insult. Again, the court found the battery to be plausibly within the scope of the mechanic's employment. And in *Bryant v. Livigni*, 629 N.E.2d 550 (Ill. App. Ct. 1993), a drunken, off-duty grocery store manager saw an 8-year-old urinating against the store's east wall, chased the kid to a parked car, grabbed a *different* kid out of the car (a 4-year-old), and threw him into the air, putting him in the hospital for 4 days. "We agree," the court said, "that the conduct was outrageous. We disagree that this precludes a judgment against [the employer] based upon principles of *respondeat superior*." *Id*. at 559.

The district court distinguished *Davila* and *Bonnem* by observing that the cab driver was transporting a passenger at the time of the assault, and the mechanic was in the process of buying an auto part as his boss had directed. Here, in contrast, the court found that Pratt "completed his job-related business [dropping off his report] without incident, and then somehow gained access to a restricted area of the police station, where he mounted an unprovoked attack on two prisoners." The distinction is a bit thin. The point of the attack was to get back at Pressley for the earlier run-in at Prairie View Apartments, which happened squarely in the course of Pratt's employment. All indications are that Pratt was still on duty, still wearing his

uniform, and still carrying his employer-issued weapons at the time of the attacks. It was not as if Pratt spotted Pressley a few days later at Wrigley Field and decided to get even with him there during a lull in action occasioned by a pitching change. And even though the holding cell area at the police station was "officially" off-limits to him, it's doubtful that Pratt would have been able to talk his way back there if he were anything other than a security guard in uniform. All these factors weigh in favor of finding that the issue of *respondeat superior* liability is for the jury to decide.

It would be another matter if Pratt's grudge weren't work-related, or if his job didn't predictably entail the occasional use of force to subdue rule breakers. *See Restatement* § 245 (master can be liable for servant's intentional and tortious use of force "if the act was not unexpectable in view of the duties of the servant"). But physical confrontations are part of a security guard's job, and it's not really surprising that once in a while one of them will go too far. *See Restatement* § 245 cmt. a (when a battery arises from a dispute connected with a servant's work, the employer's liability depends in part on the customs of the enterprise and the nature of the persons normally employed for doing the work). To be sure, the attacks in this case push the boundaries of what could be expected from a security guard, and they may in fact be outrageous enough to fall outside the scope of Pratt's employment. But we think this is a question for a jury, not a judge on summary judgment, to resolve. *See Pyne*, 543 N.E.2d at 1308; *Davila*, 776 N.E.2d at 728.

We do not believe it is beyond dispute that Pratt left his professional identity and position behind him when he assaulted the plaintiffs. We therefore REVERSE the district court's grant of summary judgment in favor of Patrick & Associates on the plaintiffs' *respondeat superior* claim and REMAND the case for further proceedings.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*