2023 IL App (1st) 220487-U

No. 1-22-0487

Order filed November 3, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| KATHLEEN A. HEISS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 2020 CH 05604 |
| THE RETIREMENT BOARD OF THE | ) | |
| MUNICIPAL EMPLOYEES' ANNUITY AND | ) | |
| BENEFIT FUND OF CHICAGO, | ) | Honorable |
| | ) | Allen P. Walker, |
| Defendant-Appellee. | ) | Judge presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Lyle concurred in the judgment.
Justice Mikva dissented with opinion.

**ORDER**

¶ 1   *Held*:   We reverse the Retirement Board's decision denying plaintiff's application for a widow's annuity where the Board's decision ignored significant evidence that plaintiff's late husband was an employee of the Fund, thus entitling plaintiff to a widow's annuity.

¶ 2   Plaintiff Kathleen A. Heiss appeals the decision of the Retirement Board of the Municipal Employees' Annuity and Benefit Fund of Chicago denying her application for a widow's annuity. The Board determined that she was ineligible because her late husband, Frederick Heiss, was not an employee of the fund for the purposes of the Illinois Pension Code and was therefore not entitled

to the benefits associated with membership. Kathleen Heiss raises the following issue in this appeal: was the Board's decision denying Kathleen Heiss widow's annuity benefits clearly erroneous because Frederick Heiss was an "employee" for pension benefit purposes under section 8-113 of the Illinois Pension Code? For the following reasons, we reverse the circuit court's judgment and the Board's decision, and we remand with instructions.

¶ 3                                    BACKGROUND

¶ 4     Frederick Heiss served as legal counsel to the Municipal Employees' Annuity and Benefit Fund from July 1983 through his retirement in October 2011. Throughout this time, Heiss's responsibilities included attending the Fund's monthly and special meetings, advising the Fund's trustees on the application of the Pension Code, consulting on personnel matters, participating in all administrative hearings concerning members' claims, and representing the Fund in litigation. The Fund's executive director supervised Heiss and controlled, delegated, and assigned his work responsibilities. In return for his service, Heiss earned an annual salary, paid in monthly installments, and a three percent annual raise. His compensation was not tied to a particular job or the amount of work that he performed.

¶ 5     Although the Fund paid Heiss as a salaried employee, he maintained a separate law practice outside of the Fund's office. Heiss did not receive healthcare benefits, paid leave, vacation and sick days, or an office. In annual budgets, the Fund classified Heiss's salary as a "retainer" under professional services—the same category under which the Fund recorded payments to actuaries, lobbyists, and consultants.

¶ 6     In 2007 the Fund's executive director submitted a memorandum to the Fund's trustees which summarized information related to Heiss's request to be classified as a Fund employee for

the purpose of a pension. Additionally, the Internal Revenue Service opined by letter, at the Fund's request, that Heiss qualified as an employee for federal taxation purposes. However, there was no vote by the Retirement Board of the Municipal Employees' Annuity and Benefit Fund authorizing Frederick Heiss's membership in the Fund.

¶ 7     The Fund issued Heiss a membership identification number, and, following the Fund's instructions, he paid $122,371.78 to obtain credit for 26.5 years of past service (dating from July 1983). The Fund made deductions from each of his paychecks until his resignation in 2011. In total, Heiss contributed more than $128,000 to the Fund.

¶ 8     Following Frederick Heiss's death, his wife, plaintiff Kathleen Heiss, applied for a widow's annuity. 40 ILCS 5/8-141 (West 2022). The Board held a hearing and, on July 28, 2020, issued a written decision denying Kathleen Heiss's application. The Board reasoned that Kathleen Heiss was ineligible to receive a widow's annuity because Frederick Heiss was not an "employee," as defined in section 8-113 of the Pension Code, and thus "not a member or participant of the Fund entitled to any of the benefits associated with membership." The Board determined that Kathleen Heiss was instead entitled to a refund of Frederick Heiss's contributions. Kathleen Heiss then filed a petition in the circuit court seeking administrative review of the Board's written decision. 735 ILCS 5/3-103 (West 2022). The circuit court denied Kathleen Heiss's petition. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 9                                    ANALYSIS

¶ 10    Although neither party contests our jurisdiction, we have an independent duty to determine whether jurisdiction is proper. *Mayle v. Urban Realty Works, LLC*, 2020 IL App (1st) 191018, ¶ 36. Judicial review of administrative proceedings is limited to final decisions 735

ILCS 5/3-103, and in the absence of one, we lack jurisdiction. *Lawrence v. Williams*, 2013 IL App (1st) 130757, ¶ 23. Upon review of the administrative record, we asked the parties to submit supplemental briefing concerning whether the Board's July 28, 2020 written decision was a final administrative decision consistent with the public voting requirement of the Open Meetings Act. 5 ILCS 120/1 *et seq.* (West 2022).

¶ 11    The Board submitted its supplemental memorandum along with the meeting minutes from its July 16, 2020 regular meeting during which the Board considered Kathleen Heiss's widow's annuity application. The meeting minutes reflect that the Board discussed the application and conducted a vote in open session. A majority of the Board members, by roll call, voted to deny the widow's annuity and to adopt the findings of fact and conclusions of law in support of the Board's decision. The Board's July 28, 2020 decision was therefore in compliance with the Open Meetings Act and constitutes a final administrative decision under *Howe v. Retirement Board of the Fireman's Annuity and Benefit Fund of Chicago*, 2013 IL App (1st) 122446. Kathleen Heiss did not object and agreed that the Board's decision was final. We have jurisdiction to review the Board's July 28, 2020 decision. 735 ILCS 5/3-102 (West 2022).

¶ 12    Kathleen Heiss argues that the Board's decision should be reversed because Frederick Heiss was an "employee" under section 8-113 of the Pension Code, and his spouse is thus entitled to a widow's annuity following his death. The Board contends that the administrative record supports the conclusion that it did not exercise sufficient control over Frederick Heiss's provision of legal services to deem him a Fund employee. As a threshold matter, the parties disagree on the appropriate standard of review. Kathleen Heiss seeks *de novo* review, arguing that the Board erroneously interpreted section 8-113, which defines "employee," in concluding that she is

ineligible to receive a widow's annuity. The Board, on the other hand, maintains that whether Frederick Heiss was an "employee" is an issue of fact reviewed under the manifest weight of the evidence standard or, at the very least, for clear error. In an appeal from a circuit court's decision on a complaint for administrative review, we review the decision issued by the Board rather than that of the circuit court. *Bloom v. Municipal Employees' Annuity & Benefit Fund of Chicago*, 339 Ill. App. 3d 807, 811 (2003).

¶ 13    Under section 8-113 of the Pension Code, the definition of "employee" includes "[a]ny person employed by the board." 40 ILCS 5/8-113(c) (West 2022). To reach its decision, the Board made a series of findings of facts and then determined Frederick Heiss's status as an "employee" based on that set of historical facts. Our review of the Board's decision does not involve interpretation of the statutory language "employee" or determination of the term's scope. Nor is a pure question of fact involved as the facts were not in dispute. Instead, whether the Board properly denied Kathleen Heiss's application for a widow's annuity depends on the evidence presented to the Board and whether that evidence satisfies the legal standard under section 8-113 of the Pension Code and the common-law rules governing employer-employee relationship. We do not disturb a finding as to whether facts satisfy the legal standard unless it is clearly erroneous. *Board of Education of City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 18 ("[M]ixed questions of fact and law are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard[.]" (Internal quotation marks omitted.)); *Rokosik v. Retirement Board of Firemen's Annuity & Benefit Fund*, 374 Ill. App. 3d 158, 165-66 (2007) (the clearly erroneous standard applied where the issue depended on evidence presented to the Board and whether the Board

properly applied the statute to that evidence). An agency's decision is clearly erroneous "only where the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001). Nonetheless, that this standard is largely deferential does not mean that a reviewing court must blindly defer to the agency's decision. *Collins v. Retirement Board of Policemen's Annuity & Benefit Fund of Chicago*, 407 Ill. App. 3d 979, 984 (2011).

¶ 14 First, the Board argues that Kathleen Heiss cannot be eligible for a widow's annuity because the Board never voted to authorize Frederick Heiss as an employee and member of the Fund entitled to pension benefits. It is undisputed that no Board vote occurred authorizing Frederick Heiss's Fund membership prior to his death. Under article 8 of the Pension Code, the Board has the power to authorize annuity payments, which can only be granted through a majority vote of the Board's members. 40 ILCS 5/8-203 (West 2022); 40 ILCS 5/8-196 (West 2022). However, the lack of a previous Board vote is without any legal consequence to our current analysis of the Board's 2020 decision. The Board's 2020 decision does not mention the lack of a previous Board vote, and instead it addresses Kathleen Heiss's request on the merits. The Board's counsel conceded at oral argument that Frederick Heiss's delay in making application and the Board's failure to vote on his membership during his lifetime is not a legal bar to considering Kathleen Heiss's application for a widow's annuity.

¶ 15 In its decision to deny Kathleen Heiss a widow's annuity, the Board ignored significant facts in the administrative record and relied on other facts wholly irrelevant to the question at hand. The Board did not address the 2007 memorandum by the Fund's executive director which

summarized information relevant to Heiss's request to be classified as a Fund employee for the purpose of a pension.[1] It did briefly refer to the 2009 IRS determination that Frederick Heiss qualified as a Fund employee for federal employment tax purposes. However, the Board quickly dismissed this determination because the IRS was "not in a position to judge the validity of the information submitted." The Board did not state that any information relied upon in the IRS determination was inaccurate.

¶ 16    But there is more. The Board overlooked what transpired after this determination: the Fund assigned Frederick Heiss a membership ID number and allowed him to make pension contributions. That is, there is correspondence in the record in which the Fund notified Frederick Heiss of his employee status and eligibility to participate in the pension and accepted all of his pension contributions. Significantly, the Fund instructed him to contribute a lump sum of $122,371.78 to obtain credit for his service dating back to the first day of employment. The Fund also began deducting pension contributions from his paychecks until his resignation. The Board's decision ignored years' worth of contributions made in reliance of the employee status determination and in expectation of pension benefits.

¶ 17    The Board argues that under *Klomann v. Illinois Municipal Retirement Fund*, 284 Ill. App. 3d 224 (1996), the conduct of the executive director and Fund staff is not a binding, final determination of Frederick Heiss's pension eligibility. That much is true. No act by staff can "make an ineligible employee eligible," and it is the terms of the Pension Code that control who is a

---

[1]This 2007 analysis was not a final administrative decision by the Board as there was no vote by a majority of the board members. This therefore was not a pension eligibility determination under section 8-196 of the Pension Code. However, this internal analysis plainly constitutes a part of the administrative record along with other items, such as the IRS determination letter, for the purpose of reviewing the Board's July 28, 2020 decision.

qualified employee. *Id.* at 227. However, unlike in *Klomann*, the terms of the Pension Code do not exclude Frederick Heiss from eligibility. See *Id.* ("Therefore, Klomann cannot avail himself of the protections afforded by the Illinois Constitution to pension fund participants where the terms of the Code exclude Klomann from participation."). While the actions of the executive director and the Fund staff are not conclusive of Frederick Heiss's pension eligibility, those acts constitute still more evidence that the Board simply failed to consider in its ruling.

¶ 18    But it gets worse. Many of the "facts" relied upon in the Board's decision are largely irrelevant to any determination of an employees' pension eligibility under section 8-113 of the Pension Code. 40 ILCS 5/8-113 (West 2022). The Board listed facts such as that (1) Frederick Heiss never filed an application for annuity benefits from the Fund prior to his death, (2) he waited over twenty-seven years to complete a Fund membership application and make contributions to the fund, (3) he maintained a separate office, (4) he did not receive vacation or sick days, and (5) he did not participate in the Fund's healthcare program. The Board's decision also mentioned that Frederick Heiss was treated "in a manner distinctly different" from other similarly situated Fund employees and that another attorney working for the Fund did not receive membership benefits from the Fund.

¶ 19    The Board points out repeatedly that Frederick Heiss did not work full time for the Fund, however there is no requirement in section 8-113 that a Fund worker must work full time to be an employee entitled to Fund benefits. 40 ILCS 5/8-113 (West 2022). Section 8-113(c) states that an employee under the Code includes "[a]ny person employed by the board." 40 ILCS 5/8-113(c) (West 2022). While other subsections of 8-113 require full-time employment (see 40 ILCS 5/8-113(j)-(k)), section 8-113(c) does not contain this requirement 40 ILCS 5/8-113(c) (West 2022).

It is similarly irrelevant, for the purposes of determining whether Frederick Heiss was an employee entitled to membership benefits under section 8-113, that an application for membership was made after Frederick Heiss's death, or that another attorney employed by the Fund did not receive membership benefits.[2]

¶ 20    In the circuit court, the Board argued for the application of a common law test to analyze whether Frederick Heiss was an employee or independent contractor. See *Warren v. Williams*, 313 Ill. App. 3d 450, 456 (2000) ("Whether a person is an employee or an independent contractor depends on the facts of the particular case."). An argument raised for the first time in the circuit court on administrative review is forfeit. *Shakari v. Illinois Department of Financial*, 2018 IL App (1st) 170285, ¶ 34. But under this analysis, Heiss was an employee. Among the factors considered, it is the right of control, not the fact of control, that is "the single most important factor in determining the parties' relationship." (Internal quotation marks omitted.) *Wenholdt v. Industrial Commission*, 95 Ill. 2d 76, 81 (1983); see also *Davila v. Yellow Cab Co.*, 333 Ill. App. 3d 592, 596 (2002). On this critical issue of control, the IRS's 2009 analysis concluded that the Fund has control over the work details of its attorneys, including Frederick Heiss. Further, the Fund paid Frederick Heiss an annual salary, in monthly installments, and he received an annual 3% raise. The record shows that the Fund issued Frederick Heiss a W-2. The relationship between Frederick

---

[2]The Board argues that allowing Frederick Heiss to receive membership benefits contravenes the public policy of benefiting eligible public employees because Frederick Heiss did not make contribution for the first 25 years of his employment and another pension fund he worked for denied another lawyer's benefits application. In making this argument, the Board did not acknowledge that Frederick Heiss had made a lump sum contribution in an amount that is not insignificant for those years' credit and failed to explain how a different individual's application denial by a different employer impacts the employment status analysis with respect to Frederick Heiss and the Fund.

Heiss and the Fund was that of at-will employment, with a 30-day notice requirement. These factors all weigh heavily in favor of finding that Frederick Heiss was an employee.

_____

¶ 21    We do not reverse an administrative decision lightly. We owe the Board's decision here substantial deference as reflected in our standard of review. But while there may be a discrete piece or two of evidence to support some finding of the Board, our review of the record as a whole leaves us with the definite and firm conviction that a mistake has been committed. There is simply too much substantial and compelling evidence to the contrary. While it may be that the guidance found in the relevant provisions of the Pension Code is sparse, the legal framework for pension eligibility and our right of review are clear enough. And any vagueness or ambiguity in the Code would be resolved in finding in favor of benefits. We conclude that the Board's decision is clearly erroneous and that Kathleen Heiss established her legal right to a widow's annuity.

¶ 22                                  CONCLUSION

¶ 23    For the foregoing reasons, the Board's July 28, 2020 decision and the judgment of the circuit court of Cook County are reversed, and the case is remanded to the Board with instructions to calculate and to award Kathleen A. Heiss a widow's annuity.

¶ 24    Circuit court judgment reversed; Board's decision reversed; and case remanded to the Board with instructions.


¶ 25    JUSTICE MIKVA, dissenting.

¶ 26    I agree with the majority that our standard of review in this case is whether the Board's decision was clearly erroneous. However, I do not think the majority gives the Board the deference

to which it was entitled in determining whether Mr. Heiss's widow is entitled to a pension from the Municipal Employees' Annuity and Benefit Fund of Chicago (MEABF or the Fund).

¶ 27 The Board has specific statutory powers, including the power to award pensions. 40 ILCS 5/8-192 *et. seq.* (West 2022). Indeed, the Illinois Pension Code expressly provides that "no annuity or benefit shall be granted or payments made by the fund unless ordered by a vote of a majority of the board members." *Id.* § 8-196.

¶ 28 The Board is an entity created by the legislature to administer the pension fund. The Pension Code mandates the composition of the Board's five members, including "the city comptroller, the city treasurer, and 3 members who shall be employees," to be elected pursuant to procedures set out in the Pension Code. *Id.* § 8-192. The Fund is not the Board. Rather the Fund has a number of employees and contractors that work for it, such as Mr. Heiss and executive director Terrance Stefanski.

¶ 29 It was the Fund, and not the Board, that told Mr. Heiss that he was entitled to a pension and collected contributions from him. These are contributions that the Board says should never have been collected and that the Board has ordered be returned to Mr. Heiss's widow. It was also someone from the Fund, not the Board, who requested an IRS determination as to whether Mr. Heiss would be considered an employee for tax purposes. In a 2009 email to his staff after receipt of the IRS letter, Mr. Stefanski noted that still "no decision" had been made by the Board and that the Board still had to review the matter. There is no evidence that this ever happened prior to Ms. Heiss's application for her husband's pension in October of 2019.

¶ 30 The Board is not arguing, as the majority suggests, that Ms. Heiss cannot be eligible because her husband did not apply for a pension before his death. Rather, the Board is arguing,

and I believe quite rightly, that anything the staff of the Fund did without Board approval is not in any sense binding on the Board. Indeed, those actions, taken without any Board approval, are simply not relevant to our review.

¶ 31    The only question for us is whether the Board's decision—once it was finally presented with the question—was so contrary to the evidence presented that it was "clearly erroneous." As the Board puts it by citation in its brief: "The question for an appellate court is not how we would rule, if we had been standing in the Board's shoes, and writing in the first instance. The question for us is does the Board's decision stink like a 'dead fish.' " *Niles Township High School District 219, Cook County. v. Illinois Educational Labor Relations Board*, 387 Ill. App. 3d 58, 69 (2008).

¶ 32    In my view, the need for deference is particularly acute in this case because it is the Board that is charged with ensuring the financial integrity of the Fund and because the determination as to whether or not someone was an employee is particularly multi-factored and nuanced. As we have recognized in reviewing administrative decisions about whether a worker is or is not an employee: It is for the administrative body tasked with making this decision "to weigh these opposing factors in reaching its decision." *Veterans Messenger Serv., Inc. v. Jordan*, 393 Ill. App. 3d 715, 722 (2009).

¶ 33    The majority finds, without citation to any particular definition of employee, that the Board's decision that Mr. Heiss was not an employee was based on the wrong criteria. Specifically, the majority criticizes the Board (*supra* ¶ 15) for failing to address a 2007 memorandum by Mr. Stefanski. That memorandum merely reports that Mr. Heiss had requested to be allowed to make pension contributions and become a member of a pension fund. Mr. Stefanski provided information to the Board in reference to that request. The information provided was nothing more

than Mr. Heiss's payroll records and W-2 forms and the relevant statutory provisions. Mr. Stefanski's conclusion at that time—with which I fully agree—was that the question of whether Mr. Heiss should be allowed to make contributions and be a member of the Fund was "To Be Determined By the Board." No such determination was ever made until Ms. Heiss applied for a pension and the Board denied that request.

¶ 34    Moreover, there is nothing significant in this memo from Mr. Stefanski that the Board failed to consider. The Board's decision specifically referenced the fact that Mr. Heiss received W-2s for his work with the Fund and noted that he also received other W-2s for his work with another completely separate fund. The only arguably relevant information in this memo that the Board did not specifically reference was that the impetus for Mr. Heiss joining the Fund came from a request by Mr. Heiss himself, who apparently wanted to add the benefit of a pension to his compensation, after he had worked almost twenty-five years for the Fund with the clear understanding that this was not part of his employment package.

¶ 35    The majority says that the Board "overlooked" the fact that the Fund allowed Mr. Heiss to make pension contributions and notified him of his employee status. *Supra* ¶ 16. It criticizes the Board for ignoring years of contributions. While the majority acknowledges that these actions are not—indeed cannot be—binding on the Board, it finds that they have evidentiary significance. I am not clear in what way they are relevant to Mr. Heiss's employee status. Nothing changed in his job duties or relationship to the Fund following these changes. If in fact these actions impacted Mr. Heiss's status, then he only became an employee in 2009 when the Fund, without Board approval, began to treat him as one.

¶ 36    The majority also finds that many of the facts that the Board relied on were irrelevant to

whether Mr. Heiss was an employee. *Supra* ¶ 18. I simply disagree. The Board relied on the fact that Mr. Heiss was never treated as an employee by the Fund in terms of benefits, that he had his own office and other clients (and employees for that matter) and that the other attorney working for the Fund was not treated as an employee. The Board also relied on the fact that Mr. Heiss performed the same services for another pension fund (LABF) and was not given a pension by that Fund. Some of this, such as Mr. Heiss having his own office and other clients, goes to whether the Fund had the right to control Mr. Heiss's actions, which, as the majority acknowledges, is the primary factor under the common law test for employment (see *supra* ¶ 20). Other facts go to what appears to be the Board's concern that workers are treated consistently. None of what the Board considered strikes me as irrelevant.

¶ 37     While I do not think it is necessary to reach this alternative basis for affirming, I agree with what the attorney for the Board suggested at oral argument—the Board's decision can also be upheld based on the analysis conducted by the circuit court in this case. We must uphold the Board's decision unless it is clearly wrong, and all the reasons set forth by the circuit court in its application of the multi-factor common law test for determining whether someone is an employee support a finding that Mr. Heiss was not an employee of the Fund. The majority criticizes the Board for raising this analysis for the first time in the circuit court. But counsel for the Board took no position at the administrative hearing, leaving it to the Board to accept or reject Ms. Heiss's claim for a pension. Thus, forfeiture for failing to raise this argument at the Board level would be inappropriate. The Board's decision can also certainly be upheld based on the circuit court's own careful analysis.

¶ 38     For these reasons, I respectfully dissent.